152001 United States v. Jose de la Cruz-Vasquez 152104 United States v. Edwin Otero-Diaz 152168 United States v. Isaias Mendoza-Ortega 152244 United States v. Edwin Otero-Marquez This may require a little bit of coordination among councils because of the issue with the Mr. Albino, who do you represent? Good morning, Judge. I represent Isaias Mendoza-Ortega, which is case 152168. Good morning, Judge Barron. Good morning, Judge Lippis. Good morning. May it please the court, may I request two minutes for rebuttal? Two minutes for remission. You may. Thank you. In this case, the evidence was insufficient to prove beyond a reasonable doubt that Mr. Mendoza possessed or constructively possessed any firearm, which is the basis for both convictions. Do you mind, before you get into that, just making sure that because there's a number of defendants, what the arguments you're raising, that you raise in your brief with respect to the conviction of your client is helpful to me? Yes, Your Honor. I'm raising on behalf of Mr. Mendoza that the evidence was insufficient to prove beyond a reasonable doubt the possession element of both counts for which he was convicted. And is he possessed as a felon, too, or not? Yes, sir. He is. He was charged. In both school zone and? That's correct. That's correct. I'm also raising insufficiency of the evidence with regards to, yeah, both counts. Those are two arguments. Then the third argument is that the court abused its discretion in admitting evidence that was unfairly prejudicial, which is the whole scene of the shootout in the housing project. Mr. Mendoza is also raising that the court exceeded its limitations of power by shifting the burden of proof and that such action was not harmless. And we're also raising that the court erred in declining to instruct the jury that in order to be guilty of aiding and abetting for the unlawful possession of a firearm by a convicted felon, that Mr. Mendoza knew that the principal had been a convicted felon. That is, the government charged him in aiding and abetting fashion in both counts. And with respect to the 922G count, there was absolutely no evidence that he knew that Mr. Otero, which is the other defendant who was charged with the 922G count, was a felon. And that's according to U.S. v. Xavier. Also, that the evidence was insufficient to prove beyond a reasonable doubt that Mr. Mendoza possessed a firearm within 1,000 feet of the school zone. And lastly, that the court erred by not instructing the jury as to the advanced knowledge requirement in the aiding and abetting charges, in both the aiding and abetting charges. That would be our arguments with respect to the appeal. Yes, Your Honor. In this case, actually, I'm referring to the United States v. Burgos, which is 703F3-1, 2012 case, where this court has stated that it is loath to stack inference upon inference in order to uphold the jury's verdict. Now, that's exactly what happened in this case. In this case, there was inference after inference after inference after inference. The first inference is a shootout. Now, it is reasonable that if there is a shootout, people start running. People want to get away from the danger. People want to get away from the shooting. And that's exactly what happened here. People started running. Now, the police officers that were close in the area testified that they observed seven to eight individuals running towards a wall, towards the other end of the housing project where the shootout took place. If you look at the housing project from where the police officer was looking at it, the shootout took place at the leftmost end of the housing project. These individuals were at the rightmost end of the housing project where he allegedly saw them jumping over a fence. Now, the evidence showed, inequivocably, this was testified by both agents that saw these individuals, that these individuals did not have any firearms. They did not observe them with any firearms. They did not observe them with any masks. They did not observe them with any fanny bags on them. That was the evidence. So, the government wanted the jury. You have something else. They were all dressed in black. Yes, Your Honor. All seven of them. Yes, that's what the evidence, yes, that's what the police testified. I thought one had a red sweater. Yes, they did. But that's one of the issues here. We don't know if the individual with the red sweater was one of the individuals that were running. We don't know if the individuals that were arrested at the entrance of the tunnels were the individuals that were running. We have to infer that. Why is that an unreasonable inference? Well, I don't think it's unreasonable. It has to be for you to win. Well, it's unreasonable to say that the individuals that were running towards the tunnel possessed firearms because the evidence conclusively stated that they did not. Except that the firearms are then found in the tunnel, and among the firearms that are found are some that, I know you challenged this evidence, but put that aside for a second. I thought there was evidence that at least some of the weapons, two I think, maybe four, had been fired recently. That was correct. There was testimony from an expert that four of the firearms that were found scattered throughout the tunnel, which is almost 1,000 foot long, 971 feet was the testimony. How did the weapons that were fired get there? Well, it is reasonable to conclude that, obviously, the firearms did not get there by themselves. Somebody had them, somebody possessed them, and somebody threw them there. So why wouldn't it be reasonable to assume that the people who had just been seen running to that exact area, right following the shots being fired, were the people that put them there? Because the evidence was that they did not see them possessing any firearms. That would seem consistent with it. Yes, they were concealing them. Well, Your Honor, there was also evidence that in the tunnel, in the middle of the tunnel, in the manholes, when the police officers went and searched thoroughly the tunnel, they observed that there were ladders that led to the manhole, which were muddy. It is reasonable to conclude that the individuals- But it has to be unreasonable to conclude that the individuals who were convicted were involved, not that it would be reasonable to conclude that somebody else was involved. Yes, yes. So what would be unreasonable about the inference that you see seven people running after shots are fired, you find seven guns in the tunnel, four of them have just been fired? What is unreasonable about a jury concluding that the seven people took them there? Well, because the evidence shows that the individuals that were running towards the tunnel did not possess the firearms or were not observed by the witnesses possessing the firearms. The evidence showed that when the police officers, as soon as they went in the entrance of the tunnel, my client was actually, Mr. Mendoza, was actually the first one to come out, and he was unarmed. He told the officers, I'm unarmed, I do not have anything illegal, there's nothing illegal, I'm unarmed. And he came out the tunnel, the police officers searched him, he did not have anything illegal. That is the evidence. Now, so we would have to assume- Before you go any further. Yes, sir. Is there evidence that when the police tried to go into the tunnel, a bunch of shots were fired? That's what the police testified, that they heard shots from- I'm asking you, is there evidence to that effect? Yes, there is evidence, there was a police officer that testified that once he's approaching the tunnel, he hears shots coming from inside the tunnel. The problem with that, Judge, is that there was no shell casings found inside the tunnel. All right. But isn't there also evidence that some of those guns were used in the commissions of the homicide? Yes, there's evidence that four of the firearms that were recovered from the tunnel matched several of the bullet shell casings from the shootout. There's also evidence that there were rifle bullet shell casings found in the shootout, but there was no rifles found in the tunnel. All right. But we're talking about the people that were caught. Yes, Judge. Well, here's the point, I think- And they also found some of the black shirts they were wearing, or somebody was wearing. That's correct, they found- With the weapon. That's correct, they found black shirts there, but- And as to the mud on the steps, didn't some of them try to get out? And when they realized the police was there, they came back in? Well, there were several manholes. The one from the ones that the police alleged they saw the individuals was the last manhole from the entrance. But the police officers testified that they saw mud from the prior manholes, from the ladders coming from the prior manholes as well. You could infer that somebody tried to get out, and when they saw people outside, came back in. Or that they got out, Your Honor, and they escaped. You can infer that as well. You can infer that the individuals that were arrested at the beginning of the tunnel saw people running, ran with the pack, were escaping from the perpetrators who were shooting at them. Maybe some of the defendants were already in the tunnel when the others came. That's the problem with this case. There are so many reasonable inferences you can draw from the evidence that the government- It's not reasonable to conclude that necessarily the individuals that were running were in fact the ones that were arrested. The individuals that were running, the evidence shows that they did not possess firearms because both police officers that observed them, they testified that they did not have any firearms on them. So that's the problem with this case. You have to stack inference upon inference upon inference in order to conclude that these individuals actually possess or constructively possess these firearms. Well, the problem that I have with your argument is if you see seven people go into the tunnel, and they see seven people come out later, why isn't it in proper inference to think they're the same seven people since they have found no others? Well, there were two individuals that were observed at the end of the tunnel. The conditions of the tunnel, as the evidence showed, was that it was a dark tunnel, that it was- Excuse me. You mentioned that. The person who stuck his head out came back in. Another one stuck his head out and ran out, and he was caught. Yes, Your Honor. Is that correct? Yes, Your Honor. That's what the evidence showed. All right. Thank you. I'm sorry. Yes, Your Honor. Judge, I just understand that the stacking of inferences is not enough. With regards to the argument that my client knew there was a school there, my client is not from Dr. Palau Housing Project. The evidence showed that he was from- Your client is from what college? Barrio Pato Viejo. He just moved to Barrio Pato Viejo in Humacao, which is by the beach area of Humacao. Humacao is a pretty big city, and there was absolutely no evidence that he knew that there was a school zone there, except for the fact that he lived in the municipality of Humacao. Again, I join in the arguments by previous counsel and previous argument that there was no evidence that the government showed, except for the fact that there was the roof of a basketball court near the tunnel, and then we would have to presume or assume and infer that then they knew that that was a basketball court of a school. And in that sense, my client, there's not enough evidence to prove that he actually knew there was a school zone there. Can I ask you about the eating and the bedding and such? Or do you want to- Just wait for the end. Justice Latimus, do you want to ask some questions now? Because we're going to ask them some questions about eating and the bedding. Please go ahead. I was actually going to ask about that, but please, why don't you go ahead and ask about that? Thank you. So can I start with the eating and the bedding, the challenge of the eating and the bedding instruction with respect to the school zone count? Just remind me, was an objection to the-Rosemont-based objection to that instruction made below? Yes, Your Honor. I filed an instruction. It's in the docket. I requested that instruction, but it was denied by the district court. With respect not to the convicted as a felon count but to the school zone count? If I recall, it was- Just the general instruction?  Just the general instruction? Yes, Your Honor.  Yes, Your Honor. Excuse me, Judge. If the court allows me, I can get that in my rebuttal. Okay, that's fine. Because I don't have it. I thought I had it here. Can you tell me what's wrong with the eating and the bedding instruction under Rosemont that was given? Well, the problem with the eating and the bedding instruction that was provided, it did not take into account Rosemont. It did not take into account the advanced knowledge element. That, in Rosemont, the Supreme Court resolved that- Why is the language that the charged defendants consciously shared the other person's knowledge of the crimes charged intended to help each other and took part in the endeavor seeking to make it succeed? Why is that not sufficient to solve the Rosemont problem? Because that is general. That is too general. I think the Rosemont decision makes it clear that there has to be a specific instruction that's for advanced knowledge of the defendants if they're going to aid in a bedded principle. That was the prior jury instruction. That's what I'm trying to figure out. In Rosemont, the concern was, because you had a 924C conviction, that he could have been involved in the drug portion of it. Yes. And all he did was know that there was a gun, but he never consciously shared the intention to have the gun further the drug conspiracy. That's correct. So I get that. But then here, the instruction says that the defendant had to consciously share the other person's knowledge of the crime intended to help each other and took part in the endeavor seeking to make it succeed. So what's the endeavor that they were trying to make succeed? Why isn't the natural reading of that the crime? And the crime is possessing the gun in the school zone. So what this instruction would then be read to say is, you consciously shared knowledge of the full crime with the intention to help each other, seeking to make it succeed, seeking to make that crime succeed. So that's not the same situation as Rosemont, in which there was no instruction that you intended for there to be a gun to further the drug offense. Here, they're sounding like you shared their knowledge of the crime of the gun being in the school zone and then took steps with the intention to make the endeavor, having the gun in the school zone, succeed. So why doesn't that solve the Rosemont problem? Well, the problem is that you can have, let's assume one of the defendants participated in this, partook in this, but not necessarily agreed with possessing of a firearm, maybe another criminal endeavor activity. Maybe the defendant, one of the defendants, did not want to partake in the criminal activity once he learned that there was a gun involved. That's what I'm trying to figure out. Given the words of this instruction, how does the instruction allow a conviction in that event? Because you have to consciously share the knowledge of the person you're aiding and abetting, having all the elements of the crime. You have to have intended to help the person you're aiding and abetting, and you have to have taken part in the endeavor seeking to make it, what's it? It is possessing the gun in the school zone succeed. So if you've taken part in the endeavor with the intention of seeking to make it succeed and you knew what it was because you consciously shared the knowledge that it had to be a gun in the school zone, why isn't that all that Rosemont requires? Because there's no evidence of advanced knowledge. But that's not an instructional problem. Right. That's an evidentiary problem. But I'm just focused on whether the instruction is impermissible under Rosemont. I'm trying to figure out what is wrong with the instruction. Because the instruction doesn't incorporate Rosemont in that sense in the advanced knowledge requirement. I think it's just a general instruction requiring that the person's knowledge of the crime charge and the indictment intended to help each other took part in the endeavor seeking to make it succeed. But it doesn't incorporate the Rosemont language to make something succeed without knowing what it is. That is advanced knowledge. That's what I'm having trouble with. Right, but the problem is that if they decided to withdraw or they decided to not partake in the possession of the firearm but in another criminal activity, then that is a problem. I think the jury had to be instructed specifically as to what exactly was their advanced knowledge of it. What exactly were the defendant's signs for requirement? What did the defendants know or not know? What did they know they were involved in? I think that's not incorporated in that instruction. Can I ask about the instruction on how the aiding and abetting affects the prohibited possession by a person who is a felon? Felon possession count. The government suggests that even if there is an instructional error on that point, that it was harmless because it's sort of too convoluted to assume that the jury would have concluded that although there's no more evidence of the other defendant who was also convicted of a felony possessing the gun than your client's evidence of possessing the gun, that somehow it concluded that he possessed the gun and I aided and abetted him, that your client aided and abetted him, rather than that your client possessed the gun. What's the answer to that? Well, the problem with that is that we don't know what grounds the jury really convicted on that. We don't know if the jury convicted based on a principle theory or based on aiding and abetting. We don't know that. That is why the way it was charged, the instruction should have been based on U.S. First Dignity Saver, that if you're going to aid and abet in possession of the firearm of a convicted felon, you have to know that that convicted felon is a felon, is in fact a felon. That is the problem legally with that issue there, Judge. But I'm saying that for that theory to work, the idea has to be that your client fought the other defendant who was a convicted felon, possessed the weapon. That's correct. Is there anything in the record to suggest it was more likely that that person possessed the weapon than that your client did? No. No, not that I recall. Both defendants were arrested at the entrance of the tunnel. None of them had anything illegal. How is it plausible then that the jury would have acted on the theory that you're representing, that they would have had to have acted on in order for the instruction to have prejudiced you? Well, because if the jury believed that one of them possessed the firearm but the other one didn't, then the instruction would apply. That's what I guess I'm asking is, what would lead the jury to believe that the co-defendant possessed it but your client did not? Because if the jury believed your client did, then there was more than enough evidence to convict of possession. Right, as a principle. As a principle. So the theory has to be, oh, well, the jury must have, because of the instruction, done an aiding and abetting, because he didn't have to know that the other person was a convicted felon. It turns out he was. But what would be the evidence that the other defendant was the possessor of the gun but not your defendant? What would be the reason? What in the record suggests that that would be a plausible conclusion for the jury to reach? Well, I think, Your Honor, that is the problem with this case, that the evidence lacks in that sense as to the defendants that were arrested at the entrance of the tunnel, because there's no evidence. To answer your question, Judge, from the record, as I view it right now, there is no evidence to say that the other one possessed it and my client didn't. There is evidence to show that one of the defendants that was arrested on top of the tunnel with a magazine that he possessed, I guess that's evidence that's more to show that he, in fact, that he was a principal, not that the other ones were. That the other ones maybe aided and abetted him. The jury could have reasonably found that, and that is a problem, then, that if they aided and abetted him, well, then the instructions were not correct. Judge Leibniz? Just very quickly. My impression is that when the government always approached Count Three on an aiding and abetting theory, my impression is that they approached Count One wanting to prove that each of the two defendants there were principals, that each one of them was a felon in possession of a gun. I'm confused. How is it that the court appears to have also instructed the jury on an aiding and abetting theory with respect to Count One as well, even though that wasn't the government's theory of the case? Did you urge the judge to give that aiding and abetting instruction with respect to Count One? Yes, we did. That's correct, Judge. Okay. So you asked that that instruction be given, but then you further wanted, and this, I gather, is your point of error. You wanted, instead of relying on the general aiding and abetting instruction, as the court did, you wanted, with respect to Count One, you wanted the judge to specifically supplement that general instruction with the instruction that your client had to acknowledge that the other, Mr. Otero, that he had the status of a felon. Is that correct? That's correct. And that is the instruction that was not given. Okay, but you're the one who wanted this aiding and abetting instruction, not the government. Is that correct? Well, no, the government wanted the aiding and abetting instruction because they charged Count One. No, with respect to Count One, not Count Three, with respect to Count One. No, with respect to Count One as well. They charged both counts in aiding and abetting fashion as well as principle fashion. Now, we requested that in order to be convicted of aiding and abetting, if the jury decided that they aided and abetted each other to convict the felons, then the U.S. versus Xavier instruction would trigger, and then they would have to instruct the jury accordingly, but the court did not. Yeah, I understand. All right. Thank you. Just to clarify, is that because there was confusion about whether the – well, maybe this is a better question for the government – but whether the charge of aiding and abetting each other was intended to be a charge of aiding and abetting as opposed to both of them as principles? Your Honor, I – We don't know. Thank you. I'm beginning to wonder if we should hear from the government every time because this is getting to be a very confusing case. What do you think? They don't have any objections. Let me hear from the defendant. How do you feel about my suggestion? Yeah, all right. Let's try it. Judge Leifert, are you in agreement with that? Yes, that's fine. Thank you. So, I guess we'll give you how much time you think you need to respond to each individual. So, we each have 10 minutes, and I've got a lot of 20 minutes. So, if you want me to take half my time or if you want me to take five minutes in order to answer the questions, I'd have to take that. Start with that, and then we can take you over. It's not your fault. Okay. All right. Thank you, Your Honor. Once more, may it please the Court, my name is Mayna Schwartz for the United States. I just want to clarify a couple of factual matters from the defense counsel's argument just now. One, he mentioned that his client had just moved to the Paso Viejo ward. There's no evidence in the record that it was a recent move or of when he moved there whatsoever. And he also said that there was no evidence that he had been in the area, but that's not true. Officer LeBron testified that he had seen Mendoza Ortega specifically at Dr. Kalu's housing project twice previously, before the day of the incident, and on one of those occasions he was with three of the other co-defendants, just so that that is clear. As Your Honor pointed out, when it comes to Rosemond, the instruction that the district court gave covered that substantially, because it says that a defendant must have consciously shared in the knowledge of the crimes charged in the indictment. That means the crime of possessing a weapon in a school zone. There's no way to consciously share in the knowledge of that and intend to help it succeed. Well, that's not – what's the key part that makes it comply with Rosemond in your view? Because it seems like you certainly could consciously share in the knowledge of the crime without having had advanced knowledge of it. In fact, it's true in Rosemond itself that at the point at which the gun emerges, you would consciously share knowledge at that point that a gun was being used in furtherance of the drug conspiracy, and Rosemond thought that was not enough. Right. So it's – I think it's the instruction as a whole, because you must consciously share in the specific knowledge of the crime charged in the indictment. I do think that's important. But then you must also have intended to help each other. Let me just break it, because this is, I think, important. Sure. Intending to help each other, but it doesn't say there that you had to intend to help with the entirety of the crime. So that would be just the Rosemond problem again, because you would consciously share knowledge of the whole crime. That was true in Rosemond. You could have consciously shared knowledge of the entire crime at the moment the gun emerged. You had to intend to help. But in Rosemond, you intended to help with a part of the crime, and that would be enough. Rosemond still thought the instruction was flawed there. So those two things don't seem to distinguish it from Rosemond. But then we get to, and took part in the endeavor seeking to make it succeed, and that it has to refer to the crimes charged in the indictment, to what you had knowledge of. And I think that's really the key. Without the antecedent, if you will, the it doesn't have that meaning. But seeking to make that crime succeed, and the crime here was possessing a gun in a school zone or being a felon in prison. And do we have any case law suggesting that an instruction written this way complies with Rosemond? Yes, Your Honor. There's a case cited in my brief where this court actually said we've had, the First Circuit has had, an advanced knowledge requirement, and it's that consciously shared formulation. Well, but that's what's bothering me, is that we said in that case the consciously shared formulation solves it. But as I look at it, the consciously shared language alone doesn't. If anything does, it's the seeking to help it succeed language that follows at the end, after. So I agree, it's the whole of it. But without the seeking to help it succeed, it's not clear to me it would comply with Rosemond. So what was the instruction that the case you just referenced referenced? I believe it was an identical instruction. This is a model instruction that's been used in. And this is word for word, the pattern instructions, you know? I believe so. I'm happy to double check on that, and if it turns out that there's a difference to submit a 28-J on that point. But my understanding is this is pulled directly from the model jury instructions for the First Circuit, and that that also was the jury instruction that was considered in the case cited in the brief. And I think that using the phrase consciously shared to refer to the instruction as a whole is fair. It's a shorthand. In that case, Routers didn't repeat the entire instruction, but saying that the consciously shared formulation of the overall instruction covers the Rosemond concerns. And I believe that is an accurate representation of the law. Now, with respect to the convicted as a felon, the absence of the knowledge that the person was a convicted felon seems like a problem. No? No, Your Honor. Why not? Because to convict them as a principal, they don't have to have knowledge that the other person is a felon. And so there was no evidence offered to show that they knew that the other person was a felon. But under Rosemond, on the aiding and abetting, how could you possibly address this in person? In person? No, not in person. As a principal, Your Honor. So if it's aiding and abetting, the aiding and abetting instruction, given that there was an aiding and abetting theory of liability, the absence of any requirement of knowledge of the person being a convicted felon is a big problem, right? Again, this court's case law says that when there's a factually insufficient version of the charge and a factually sufficient charge... Yeah, but this would be a legally problematic charge because there was instructional error. I see what Your Honor is saying. Let me take a step back. Because there was no evidence presented to enable the jury factually to... That makes it worse, not better. It makes it worse because if there's instructional error, the jury was then told you could rely on this count absent that element. If it had been the proper instruction, then you're exactly right. The lack of sufficiency of the evidence to support the theory means we must assume the jury relied on the proper theory. But when there's instructional error, we don't get to do that. If there's a factually sufficient charge that was properly instructed, which there was in this case... Yeah, but there was also an improperly instructed charge also presented. So what's the government's answer to that? I don't know of any case that suggests you can give a proper instruction on one charge and an improper on another, and we just assume that they did it on the properly instructed one. What we've said is if there are two properly instructed charges, if one is factually insufficient and one is factually sufficient, we assume they did it on the factually sufficient one. I guess I would ask Your Honor to clarify what it is that the... Because the aiding and abetting instructions were the same. Yeah, but the aiding and abetting instruction here is coupled with an instruction on the underlying crime that omits the element of knowledge of the person being a convicted felon. I think we come back to the same instruction, that the aiding and abetting instruction does say that the charged defendant consciously shared in the other person's knowledge of the crimes charged in the indictment. But that crime was then instructed as... Maybe I'm missing something. The instruction on the convicted felon, there was, as you say, no instruction that they had to know the other person was a convicted felon, right? But knowledge of the crime charged in the indictment, that means knowledge of being a felon in possession. So it seems to me from reading that... What do you do with the fact that... Am I wrong that there was an instruction which said that you could be convicted of... I have just re-read the aiding and abetting instructions and I do not see that here. So you're saying that because the aiding and abetting instruction refers you back to the indictment and the charge in the indictment requires you to have knowledge of the person being a convicted felon, it didn't need to be a separate instruction saying you have to know that the person was a convicted felon to aid and abet. Correct, Your Honor. I've got it. Okay. If you don't have any further questions at this point, I'll save the rest of my time for answers. Just one last one. Assuming that what you just said has a problem, because I know you think it doesn't, and maybe it doesn't, but assuming it does have a problem, you also, I thought, were making a harmless error argument on the felon in possession count on the ground that it's implausible that the jury would have concluded that he possessed the gun because there's no more evidence of his possession of it than the defendant. I just can't think of a case, and I didn't see any authority cited for the proposition, that that's how we do harmless error review. We sort of jump to a different offense, assume that it was a different offense entirely that was then the one that they convicted under. And I just don't know if you have any authority to support that idea. I understand the logic of it, but I'm just not sure that I saw any precedent to support it. And if you don't have it, you could submit a 28-J with some authority to that. Certainly, Your Honor. I don't believe that there's a case on point, but I will check again. But I think that maybe part of what might resolve your discomfort with it is that it's not a separate offense. This court has said that it is part and parcel of every charge, whether it's explicit or implicit. So it's simply part of the formulation of any offense that might ease your discomfort somewhat. Did you want to ask Judge? Oh, yes, Judge Michael. Thank you for inviting me. It may not be important legally, but I am curious. You were certainly right that even if the charge is charged as a principle, the abetting liability is still a variable approach. But in charging count one, I thought the government charged that. I don't know about count three. I thought you charged the defendant as principles only. Is that correct or not correct? I would double-check the indictment, Your Honor, which I'm happy to do once I'm back at my seat. But, again, even if we charged them just as principles, aiding and abetting would be incorporated in that charge nonetheless. Right. So how did aiding and abetting on count one get into the case? Did you urge that as an alternative ground of liability for your jury to consider? No, Your Honor, and that's part of our harmless error argument. The idea that the felon in possession was an aiding and abetting liability situation was not the government's position at any point. They were, from our perspective, charged as principles and convicted as principles in this story. But just so I get it, the instruction wouldn't have made that clear. As a juror, how would I have known that? Because there's just a general aiding and abetting instruction that seems to apply to everything. Correct. And, again, since aiding and abetting liability is implicit in every charge, that's just it. It's difficult to say it's implicit in every charge when there's no aiding and abetting instruction and the government doesn't offer a theory of aiding and abetting. But I think the problem here is there is a general aiding and abetting instruction. So then the concern is, in a case like that, the jury may well have thought it could convict on aiding and abetting because it was put in play by the instruction. Okay. So to the extent that... In other words, the government could have said, make it clear that as to count three, aiding and abetting. But the government didn't do that. There's just a general aiding and abetting instruction that applies to every single count. Sure. But to the extent that aiding and abetting liability is harder to prove and we offered no evidence on that, it doesn't seem realistic to assume that that's the route the jury went. And I think that's why that case that says jurors can see when there's a factually inadequate charge and we're not going to assume that they convicted under that, this would still follow with that. Even if you set aside the question of the instruction, it was factually inadequate evidence to convict a felon in possession under aiding and abetting liability because it was just never argued. Thank you. Thank you. Ms. Rosen, good morning. May I please support Lauren Rosen on behalf of Mr. Otero Marquez? May I reserve two minutes for rebuttal? Yes. Thank you, Your Honor. Who do you represent again? Mr. Otero Marquez. Okay. Thank you. Your Honor, Mr. Otero asserts that the district court in this case erred in two respects. First, the district court erred when it failed to instruct the jury that to convict Mr. Otero of aiding and abetting a felon the jury had to find beyond a reasonable doubt that Mr. Otero knew his co-defendant, Mr. Mendoza, was a felon. Second, we submit that the What's your answer to the government's argument that the aiding and abetting instruction refers you back to the charge in the indictment and the charge in the indictment required knowledge? Your Honor, the charge in the indictment was both principle and aiding and abetting and there's no language in the indictment that would tell the jury that to find Mr. Otero guilty as an aider and abetter, he had to know that the principal, Mr. Mendoza, was a felon. Our second argument, Your Honor, is the sufficiency of the evidence. But going back to the aider and abetter liability, the I just want to make sure I understand this because it seems important. The indictment says what? The indictment charges both Mr. Mendoza and Mr. Otero as principles aiding and abetting each other and it lists seven possible weapons of liability. In the trial, the government puts forward both theories of principle and aider and abetter liability. On multiple occasions So now when it says aiding and abetting each other in the offense, and then what does it describe the offense as with respect to being a felon in possession? Possession of seven firearms. During trial Because it described the I see, and it just would say as the indictment just says as a convicted felon. Yes, Your Honor. Without saying anything about who knows it because if you are a convicted felon, we don't care if you know you're a convicted felon, you just are. Yes, Your Honor. And the government certainly proceeded under an aiding and abetting liability theory at trial. On multiple occasions in response to objections as to admissibility of evidence, the government argued that certain pieces of evidence, like the fact that my client had a son also charged in the indictment, was admissible to prove aiding and abetting liability. And in the rebuttal to their closing, the government put forward the aiding and abetting liability as to all defendants. So clearly the government was moving forward on a theory of aiding and abetting liability. What's more, the jury was specifically instructed, as to count one, that they could find Mr. Otero guilty if they found him guilty as a principal or if they found him guilty as an aider and abetter. This court in U.S. v. Ford has held that the men's radar requirement is an element of aiding and abetting the possession of a felon. So the law is clear that knowledge of the co-defendant's status as a felon is an element of this offense. I want to touch briefly on some of the points Sharon has brought up in previous arguments. The judge did give the consciously shared language in jury instructions. And this circuit has held... The instruction, this is the aiding and abetting instruction, says that the government must prove beyond a beautiful doubt that someone else committed the crimes of possession of a firearm by a convicted felon. And that the charged defendants consciously shared that other person's knowledge of the crime. The crime is possession of a firearm as a convicted felon. And the aider and abetter has to have knowledge of that person's commission of that crime. So what's the problem? The problem is, Your Honor, the consciously shared language is defined later as consciously sharing the knowledge of possession. And if you go down, the court goes on to say consciously share knowledge of possession. And we would submit that, yes, this consciously shared language that the court employed would be fine if our objection was that our client didn't have advanced knowledge. But it certainly does not tell the jury that they have to know, they have to find beyond a reasonable doubt that Mr. Otero knew his co-defendant was a felon. And this language is actually similar to the language in Roseman itself. And in Roseman, the court addressed this issue and said an umbrella instruction that is later defined to exclude the element that the counsel specifically requested is insufficient. What's more, Your Honor, the government... Where is that in the, which is the part of the instruction that you're saying is now flawed? Your Honor, on day 17, page 22, he goes on to say defendants must have knowingly and voluntarily assisted in the commission with knowledge that the weapon was possessed. So he defines knowledge in relation... Can you say commission, commission of the crime? Yes, Your Honor. Doesn't that hurt you? No, Your Honor. Because if you have knowledge of commission of the crime, the crime is possessing it as a felon, right? Yes, the crime is possessing it as a felon. However, knowledge is defined as to knowledge of the gun. And what makes felon in possession a crime is not the possession of the gun but, in fact, the felon's status. I'm just trying to figure out whether the instruction informed them of that or not. No, Your Honor. We submit that it didn't because they defined knowledge as to knowledge of possession. And, Your Honor, the government clearly thought that the instructions didn't include the element of the mens rea because in their objection to the court, they stated that to require the jury to find under aiding and abetting liability that Mr. Otero knew Mr. Mendoza was, in fact, a felon would be to add an element to the aiding and abetting charge. So I think all parties were clear, in fact, that these instructions did not encompass a mens rea requirement. Now, I want to talk about harmless error. In U.S. v. Ford, the evidentiary standard this court employed was the evidence of the missing element. Your knowledge that Mr. Otero knew Mr. Mendoza was a felon, was it so overwhelming that any rational jury would have been compelled to find beyond a reasonable doubt that Mr. Otero knew Mr. Mendoza was a felon? There was not a shred of evidence on this record that Mr. Otero knew Mr. Mendoza was a felon. There's not a shred of evidence on this record that Mr. Otero knew Mr. Mendoza before the date in question. So the harmless error analysis... But the only wrinkle here is, if I understand the government's argument, that because there's also the possessions charge against your client himself, the thing that is odd is you'd be imagining that the jury thought there was enough evidence to show that the other guy possessed it, but not enough evidence to show that your client possessed it, even though there's no more evidence of possession of the other guy than of your client. That is odd. Well, Your Honor, I think there is evidence that would support the theory that Mr. Otero was an anger abettor and Mr. Mendoza was a principal. Now, the evidence of this case was circumstantial as we submit weeks, but the day before the date in question, Officer LeBron saw Mendoza, the other person charged in count one, with three co-defendants in the Palau housing project. What could a jury infer from this? That Mr. Mendoza was in charge of planning with a principal in this crime. Mr. Otero was not seen there, nor was his son. So I think that is significant evidence. Thank you. Unless the Court has any further questions. Mr. Leibniz? No, I'm fine. Thank you. Thank you. All right, Your Honor. I think that perhaps turning to the description from jury instruction number 16, which explains the count one charges, might help to clear this up. So this is what the jury heard from the Court. Defendants Edwin Otero Marquez and Isaias Mendoza Ortega are charged with possessing firearms and ammunition in or affecting commerce after having previously been convicted of a crime punishable by imprisonment for more than one year. That's against federal law. If you find co-defendants guilty of this crime, you must be satisfied that the government has proven each of the following things beyond a reasonable doubt. First, that they have been convicted in any court of crime punishable for a term exceeding one year. That was stipulated, so you are to take that fact as proven. Second, that co-defendants Otero Marquez and or Mendoza Ortega knowingly possess a firearm described in the indictment. Third, that the firearm was connected with interstate and or foreign commerce. The government does not have to prove that they knew their conduct was illegal. The word knowingly means that the act was done voluntarily and intentionally. And then it goes on to define the different forms of possession. Possession includes sole and joint possession. Mere proximity is not enough, but there is such a thing as constructive possession, et cetera. In that instruction of what the government must prove to convict the defendants under the count of being a felon in possession, there's no mention of aiding and abetting liability. It says the government has to prove that they were felons, that they knowingly possessed a firearm, and that the firearm traveled in interstate commerce. And that is exactly what the government did. I don't understand the significance of that because there also was a general aiding and abetting instruction. Are you suggesting that that instruction made clear that the jury could not convict on an aiding and abetting theory? I am saying that the aiding and abetting instruction, again, it wasn't limited, but it did come after the description of the knowingly possession of a firearm in a school zone. And so it's not clear that the jury would have taken it. The instruction specifically references both defendants. Nonetheless, to the extent that the jury was properly informed. Okay, but what are you saying? I mean, it's okay to say something, but I just want to know what it is. Is the idea from the government's view that notwithstanding the aiding and abetting instruction upon both defendants, the instruction you just read to me, that it could only convict on a principle theory? Not that it could only convict on their principle theory, but I'm saying they were properly and thoroughly instructed as to how to convict the defendants as principles and that those things were thoroughly proven and, again, where there's a basis that has been factually proven. Was there a proper aiding and abetting instruction? Excuse me? Was there a proper aiding and abetting instruction? There was aiding and abetting instruction for that offense. Was it proper? We believe so, Your Honor. Which is why? Because it said that you must consciously share in the knowledge of the crime, which is being a felon in possession, and intend to the same instruction that was given before that I read in full. So it references the indictment. It references the offense itself, which requires being a felon. So having knowledge of the offense requires knowledge of being a felon. And I just want to emphasize that the instructions on how to convict them as a principle, there were three things. One of them was stipulated. One of them was not seriously objected to, the interstate nexus. And so to the extent that the only remaining thing required for the jury to convict them as principles was constructive possession of a firearm,  Didn't they have to know beforehand? Right there. Didn't the instruction have to specifically require that they know beforehand that they were dealing with felons in possession? Where is the instruction to say that? So the phrase advanced knowledge, of course, does not appear in the instruction. Isn't that in the inquiry right there? It does not because the court has said that you already had an advanced knowledge instruction and it's embedded in that consciously shared paragraph. That to have consciously shared in the knowledge of the crime and to have intended to help it succeed, that that requires advanced knowledge, even though it's not said by those courts. Advanced knowledge of the crime. Yes. Is that what you're saying? Yes. Where does that phrase include, advanced knowledge that they're felons in possession? Could Your Honor repeat the question? I think what, if I understand you, the advanced knowledge requirement of Rosen is in your view solved by the portion of the consciously shared instruction that says seeking to make it, the crime, succeed. Seeking to make the crime succeed. Given that you had to have knowledge of the crime due to the consciously shared portion of the instruction and that the crime is defined as a crime that can only be committed by a person who is a felon, convicted felon. So the idea is the aide and abettor has to know that the other person was a convicted felon and has to have sought to make the crime of possessing the firearm as a convicted felon succeed. Correct, Your Honor. And Rose wants to take care of it in your view. Yes. If I understand the defendant, they're suggesting there's a portion of the instruction which, notwithstanding that aiding and abetting instruction, defines possession as if the crime is independent of possession as a felon. And what I now understand, the portion you're reading me from the principal liability theory, what you're saying is, yes, there was a separate provision saying what possession was, but it was predicated on the prior element requirement that that person be a convicted felon in order for there to be a crime. Is that right? Yes, Your Honor. Okay. And I would just point to, and I briefly point to, I believe, at least two other opinions in other circuits, one of which was unpublished, where they've said that similar consciously shared instructions satisfy the advanced knowledge requirement of Roseman. Are those in your brief? Yes, they are. I believe one was from the Fifth Circuit, Your Honor. Are you finished? Just about. Would you like to ask? No, finish it and then I'll ask. Okay. If Your Honors don't mind, I know that the counsel for Jose de la Cruz-Vasquez did not speak at oral argument, but with your permission, I'd like to address a couple of his arguments from his reply brief that we did not get to respond to. But that's sort of a bit of a shift, so I didn't know if you wanted to take care of any other questions for that. I'd also like to move side-by-side from here. Just to clarify my prior comment about the wall, I thought it might be helpful to see the two pictures of the wall side-by-side so that it's easier to see what we're seeing in the process. This is what we're solving for. Yeah, so this is 6A. And as you're seeing, you're seeing the wall there. My confusion is that that wall is not solid. The one you're pointing to in the other picture seems to be solid. That may be a different… Yeah, I'll show you. There are perforations. When she pulls up the other, you can see one of the perforations in that other picture. In the meantime, De La Cruz Vasquez's brief introduced some confusion about the tunnels and where exactly he was seen coming out of, so I'd like to do my best to resolve those factual issues. So what he ignores is, one, that Officer Fontanez testified that when he saw the group of people running in dark clothing away from the scene of the shootout, that he testified that one of them had some red on. So there was a person with red in that group of people in dark clothing. Let me switch now since we're able to see. So that is one of the perforations in the wall, presumably. There's another one behind his head. So they're blocking a good portion of the wall, but these indentations are actually those perforations in a very thick cement wall. You can see the thickness of the fence there, and that it comes almost as tall as the buildings there. Number two, De La Cruz Vasquez ignores that both Officer Fontanez and Officer Cruz said that he came off the same manhole as a guy without a shirt on, and that guy without the shirt went back in the manhole, and we know that the place where the shirtless people came out of and were arrested was that same tunnel where all the weapons were found. So there's evidence that De La Cruz came out of a manhole in that tunnel where all the weapons were and where all the shirtless guys were. There's also LeBron, who actually knew him. They belonged to the same gym. Officer LeBron said he came out of the area of that first tunnel, and De La Cruz Vasquez also had an extended .40-caliber magazine in his pants pocket, and there was a .40-caliber gun found in that first tunnel. So circumstantial... Excuse me? Correct, that's De La Cruz. He was also the one wearing a red sweater and a black jacket. So in his brief, he raises an argument that maybe he was coming out of one of the other tunnels, and I just wanted to clarify that there are quite a few facts that support that he was coming out of that first tunnel. Are there any other photographs that I didn't adequately cover, for your honors, that you had any questions about? Not yet. Before you do that, I just have one question on the primal error point that's helpful for the defendant who just spoke, which was that the two defendants who were charged with felon possession, with respect to the aiding and abetting, you make a harmless error point that there's no reason to think the jury would have concluded one possessed rather than the other. She's made an argument that the record shows that the jury could have found that one of the two was more likely to be the principal than the other because of the evidence showing prior connection to the other co-defendants. What's your answer to that? Sure. So I may have misheard her, but I thought that she implied that the officer who testified that he saw Mendoza Ortega with three other defendants, that that was the day before the incident. That was not the testimony. It was just prior to the incident. So it could have been months before. It could have been the previous year. There's nothing connecting that particular meeting to this. It's just evidence that they knew each other. The same officer also knew Otero Marquez and Otero Diaz, the son, because they belonged to a gym within walking distance of the lab. So there was no evidence of those two knowing the other people in the same way that there was evidence of the other co-defendant knowing other people in the group? Correct, Your Honor, except for the fact, of course, that they all participated in this very dangerous activity in broad daylight in a public place together. I would also like to emphasize that if we could go back to 2A or 2H, 2H is better, that this over here, this overpass, is where the officers testified that they waited during the shootout. That's how close they were to Jardines at the time that they heard the 113 shots being fired. And so Officer Fontanez, who was on his motorcycle, testified that he got to the housing project within two or three seconds after the shooting stopped. And that's when he saw a group of seven or eight individuals running from the shooting scene along this back wall. And so at every point where there was a break between the buildings, he could continue to see that group. And when they got to the wall, which is in this area, he observed three or four of them jumping the fence, and that's when he made the decision to go around to try to head them off up here. When he got there, which he testified took maybe a minute or two, there were already officers there. That's how quickly they responded. And so he waited there a moment and then went around to the other end of the tunnel up by Dr. Palau, where, again, there were already seven or eight officers. So within bare minutes from the time of the shooting, there were officers at both ends of the tunnel. And this just goes to the argument by Mr. Albino that there could have been other people getting into the tunnel, bringing the guns to the tunnel. This happened so fast that the only rational inference is that for the guns, the four of them that were tied to bullets and shells retrieved from the scene here to get into the tunnel is for those defendants to have carried them there. Before I ask you this, Mr. Leff, do you have any questions of the government? No questions. Thank you. I'll wait for my questions until I hear all the arguments. Okay. We may be at the end of the arguments, Your Honor. Nobody else is arguing? She has two minutes in rebuttal, but I don't know that you'll hear from me after that. Well, you will hear from me. Let's put it that way. Okay. It would be my pleasure, Judge. I just want to make clear that there's no evidence from the record that Mr. Mendoza was any more of a principal than any of the other co-defendants charged. The fact that Mr. Officer Lebron, who never testified in the first trial,   in the housing project, testified that in the second trial, at some point in time, we have no idea of when this was. It could have been years before or months or whenever it was. I don't think that's evidence which the government has conceded that is not connected to the actual events that took place. So let me just make clear that there's no evidence as to Mr. Mendoza being more of a principal than any other defendant. Now, with regards to Judge Barron, who asked me before about the jury instruction that was requested, it's in the docket of document 503, at the District Court's docket 503. The instruction that was requested specifically by Mr. Mendoza was that Mr. Mendoza request the jury instruction relating to aiding and abetting to be provided to the jury including the following. A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advanced knowledge of the crime. That was the evidence that was requested, Your Honor. That would be my final rebuttal.  No questions. Thank you, Your Honor. May I please report? To begin with, Your Honor, the cases cited by the government, linear, the Sixth Circuit unpublished opinion and Davis from the Tenth Circuit, which was on plain error review, only deal with the consciously shared language in regards to possession. That's not our argument.  also deal with the consciously shared language in regards to possession. also deal with possession, advanced knowledge of possession of the gun. There is not a case cited by the government that the consciously shared knowledge is enough to impute to the jury that they have to find beyond a reasonable doubt that aid or abet. Could you just explain what's wrong with the government's theory? I'm just reading the text of that consciously shared language. You have to consciously share knowledge of the crime and you have to have sought, what's the very end of it? Seeking to... Your Honor, the problem with the umbrella consciously shared language is that the court goes on to define knowledge in regards to possession. But it's irrelevant, is the government's point, that it does that because it does that with respect to the principle theory of liability, which is what the crime is. With the aiding and abetting instruction, you have to have knowledge of the crime, not knowledge of possession, knowledge of the crime. Well, the crime includes both the possession and possessing it while a convicted felon. So I have to have knowledge of that entire crime. Since that's the predicate, and then it says you must have provided assistance while seeking to accomplish it, what's missing from Roseman? If you have knowledge of the crime and you assisted it in order to make it happen, how could you be doing that without advanced knowledge of the crime? It would be impossible, wouldn't it? Your Honor, it is correct that it would be impossible to aid an abetted felon without advanced knowledge that the person was a felon, and that's exactly... No, no, no, that's not what I said. The instruction, the text of the instruction, the umbrella instruction requires you to know of the crime, and as you say, the crime includes more than possession. It's possession as a convicted felon. So you have to know that and then seek to make it happen. May I respond, Your Honor? Yes. Thank you. Your Honor, there was nothing in the instructions besides the consciously shared knowledge that would alert the jury that they had to find Mr. Otero, knew his co-defendant was an aider and abetter, and in fact in Ford, this court struck down language that was more explanatory. In Ford, relying on Xavier from the Third Circuit, the district court instructed the jury that they had to find reason to know, and there's nothing in the consciously shared language that is stronger  And clearly both the court and the government and the defense at trial all contemplated that the consciously shared language did not include the mens rea requirement. That's explicit on the record. One more point I want to make about the harmless error analysis, which we spoke about. If I may, I know my time's up. May I? Go ahead. Thank you, Your Honor. The harmless error analysis this court should employ is not whether there's sufficient evidence on the principal charge. And under the harmless error analysis this court should employ, as instructed by Ford, it doesn't matter whether there were differences between Mr. Mendoza and Mr. Otero. The analysis should be whether there's sufficient evidence on the record so a rational jury could find beyond a reasonable doubt that they knew the other was a felon. So we believe that is the analysis this court should employ. Nonetheless, we also assert that there was sufficient facts on the record that would distinguish Mr. Otero from Mr. Mendoza. Thank you. Go ahead. Sit down. I'm going to ask a question, but I think I want to respond more from the defendant or a felon, let's say. What is the government's position as to what, assuming there's a partial reversal in this case, dealing with the instructions of, and don't celebrate yet, because this is simply an academic question at this point. Assuming there's a partial reversal on the issue of the instructions, what is the government's position as to what we should do with the rest of the case? Mr. Otero. Mr. Mendoza. Go ahead. So if I understand your owner's question correctly, you're asking in the instance that there was a partial reversal, on the felon in possession charges due to the allegations of instructional error that I get? Correct. If that were the case, then the convictions for possession in a school zone would still be left intact, and the case should be reamended for a new trial on the felon in possession counts because instructional error can be retried. Correct. Thank you. Thank you. Judge Leifert, did you want to ask counsel any questions? No, I'm all set. Thank you. What about the rest of the defendants that aren't here? No, I'm asking the government. So there's only two that were charged with felon in possession, correct? Yes. All right. Thank you. May it please the Court? We understand under Griffin and Rosen that because of the instructional error, the general jury verdict must be set aside. I did not prepare on the split verdict issue, and if your owner would so request, we'd be happy to brief the issue. No need to. We'll look into it. I mean, this is why I say don't celebrate, because all this is an academic question at this point. This is a rather complicated case, as you are all aware, and after we do our work, we may come up with a completely different conclusion. So thank you very much for all counsel. Yes. Judge, if I may, I also agree that the jury verdict is set aside. Thank you. Judge Latham, do you have any questions of your fellow? No, I'm all set. Thank you. Thank you.